PER CURIAM.
Pursuant to article V, section 9 of the Florida Constitution, and in accordance with the criteria, additional factors, and procedures set forth in Florida Rule of Judicial Administration 2.035, we hereby certify the need for twenty additional judgeships during the fiscal year 1985-86, as follows:
District Circuit Court Court County Court
Second Appellate District 1
Third Appellate District 1
Fourth Appellate District 1
Fifth Appellate District 1
Fourth Judicial Circuit 1
Sixth Judicial Circuit 1 1 (Pinellas)
Seventh Judicial Circuit 1 (Volusia)
Ninth Judicial Circuit' 1 1 (Orange)'
Eleventh Judicial Circuit 1 2 (Dade)
Twelfth Judicial Circuit 1 (Sarasota)
Fourteenth Judicial Circuit 1
Fifteenth Judicial Circuit 1 1 (Palm Beach)
Seventeenth Judicial Circuit 1 (Broward)
Eighteenth Judicial Circuit 1 (Brevard)
Nineteenth Judicial Circuit 1
TOTALS 9
Further, we hereby certify the need for five additional judgeships in FY 1986-87 as follows:
*287 District Circuit County Court Court Court
Fifth Judicial Circuit 1
. Eighth Judicial Circuit 1 (Alachua)
Twelfth Judicial Circuit 1 (Manatee) Eighteenth Judicial Circuit 1
Twentieth Judicial Circuit 1
TOTALS 3 2
On January 26, 1984 we certified the need for a total of thirty-three new judge-ships for FY 1984-85. 446 So.2d 79. The Legislature funded seventeen additional judgeships during the 1984 legislative session, nine circuit court and eight county court. We have now received a total of twenty-seven requests for FY 1985-86 and eleven requests for FY 1986-87. Twelve of the requests for FY 1985-86 are for recertification and authorization of judge-ships not authorized in the 1984 session of the legislature.
For those circuits for which we have certified a need for new circuit or county judges in the first year of the biennium, we have generally not certified judges for the second year. We will reassess the needs of those circuits and counties affected, as part of next year’s certification process.
FINDINGS
DISTRICT COURTS OF APPEAL
In 1979 the Appellate Structure Commission recommended a standard of no more than 250 primary assignment cases for each appellate judge. On February 23, 1984 this court adopted that standard as part of the certification criteria and procedures of Florida Rule of Judicial Administration 2.035, acknowledging that an appellate judge should not be required to handle more than 250 primary case assignments per year. In reality, each judge’s case load would be three times the number of primary assigned cases because district courts sit in panels of three, and each judge has two secondary case assignments for each primary assignment. All of the district courts presently exceed this standard. In order to ensure the integrity of the appellate process, this excessive case load should be reduced, as soon as practical, to the 250 case per judge standard.
Florida’s district courts of appeal have consistently ranked high among the country’s intermediate appellate courts in filings per judge and number of published opinions. The judges of these courts have worked diligently to keep abreast of case loads in excess of the recommended standard in spite of the fact that no new judge-ships have been authorized for the district courts of appeal since 1982. Further, the courts have endeavored to improve the manner in which cases are managed and employ procedural innovations, such as placing selected cases on a fast track and reducing briefing requirements. The district courts of appeal have also developed plans for the use of automation to speed word processing tasks, improve case management and enhance legal research.
This year’s certification of but four of the six judgeships certified last year, reflects a commitment to seek and employ alternatives to the authorization of new judgeships wherever possible. We encourage the authorization and funding of the four judges certified. We also encourage funding of additional legal and administrative support staff for various of the courts in lieu of additional judgeships, as well as for automation. These resources, when collectively employed, will enable Florida’s district courts of appeal to better manage what is clearly among the largest case loads in the country.
First Appellate District. The First District, which currently has twelve judges, has not requested any additional judges this year. To achieve the 250 primary case *288 assignment standard in 1985, the First District would need one additional judge. The First District, however, has expressed administrative concerns about expanding beyond its current membership. Additionally, the filings in the First District have leveled off over the last few years. Accordingly, we are not certifying the need for a judgeship this year.
However, the First District Court of Appeal has undertaken a major office automation project that will enhance its word processing, case management and legal research capabilities. The systems being developed are to serve as prototypes for the other four district courts of appeal. Therefore, we ask the continued support of the Legislature for this effort.
Second Appellate District. The Second District currently has ten judges, and the need for two additional judges was certified in 1984'. We certify the need for one additional judgeship for FY 1985-86. The general leveling off in appellate filings and a 1984 filing rate slightly below the 1982 high realized by the court, while not diminishing the potential cost effectiveness of adding two judges, makes consideration and funding of alternatives to one of the requested judgeships viable.
The Second District currently has the fewest number of support staff per judge of the five district courts. Its work is further complicated by the difficulties of maintaining collegiality and timely disposing of matters, with judges assigned to two locations. The court had 283 filings per judge and produced 259 dispositions per judge in 1984. We find these factors plus an increase in filings of 198 cases, from 1983 to 1984, to justify the need for the one additional judgeship which is certified. In lieu of certification of the need for a second judgeship, we recommend funding of two senior law clerk positions and the administrative support staff for the Clerk’s office, requested by the Second District Court of Appeal in its FY 1985-86 budget request.
Third Appellate District. The Third District currently has nine judges, and the need for one additional judge in FY 1985-86 is certified.
The Third District has, for the past two years, had the highest ratio of filings and dispositions per judge. The court had 345 filings per judge and produced 351 dispositions per judge in 1984. In order to achieve the 250 primary case assignment standard in 1984, a total of almost four additional judges would be required, rather than just the one requested and presently certified. The Third District has not requested the additional judges because of space limitations. When additional space is provided, the already existing needs of the Third District will justify the certification of additional judges in order to reduce its filings per judge, presently the highest in the state, to a more acceptable standard.
Fourth Appellate District. The Fourth District has nine judges, and the need for one additional judge in FY 1985-86 is certified. The court had 309 filings per judge and produced 318 dispositions per judge. The Fourth District continues to have the largest number of pending eases of the five district courts of appeal. Filings exceeded dispositions in 1982 and 1983.
The developing backlog is a function of an unusually high percentage of civil cases, which are generally more complex. Many involve appeals from trial court judgments in cases classified as complex litigation. This has resulted in the Court granting oral argument in fewer than 50 percent of the cases and issuing more PCA opinions.
In order to fully achieve the 250 primary case assignment standard in 1985, the two additional judges certified in 1984 would be required in the Fourth District. At this time, however, we certify only the one additional judge and request that funding be provided for two senior law clerks in FY 1985-86, in lieu of the second.
Fifth Appellate District. The Fifth District has had six judges since its creation in 1979, and the need for one additional judge in FY 1985-86 is certified. This is a recer-tification of a need that has existed for the past two years and continues to exist.
*289 The Fifth District continues to have the highest ratio of population per judge of any district and a high attorney per judge ratio. Filings have increased every year since the Fifth District’s creation, with the exception of a very slight reduction in 1984. Projections show a continued growth trend. The Fifth District currently has the second highest number of cases pending per judge of the five district courts of appeal. The court had 314 filings per judge and produced 332 dispositions per judge in 1984.
In order to fully achieve the 250 primary case assignment standard in 1985, two additional judgeships would be required, but we certify only the one requested at this time, requesting that funds be provided for two additional senior law clerks in lieu of a second judge.
CIRCUIT AND COUNTY COURTS
At the trial court level, case filing statistics are not as significant in relation to other criteria and factors as they are at the appellate level. Geographic size, attorneys per judge, the presence of nonlawyer county judges, the extent to which county judges are utilized in circuit court, the location of state institutions within the circuit, the availability of retired judges and masters, resident and transient population, and case complexity are all considered in evaluating the need for additional trial court judgeships. Thus, while a standard of not more than 250 primary case assignments has been developed for the district courts, no similar standard can be applied at the trial court level. A case load standard at the trial level that ignores variations among the circuits would not be a correct measure of the need for additional judges.
Case load information on the trial courts, available at the state level, is derived through the Summary Reporting System (SRS), which was implemented in 1977. SRS requires the commitment of only limited state resources. The clerks of the circuit courts provide monthly tabulations of case filing and disposition statistics to the State Courts Administrator’s Office. While regular reviews of up to one third of the counties annually indicate substantial compliance by the clerks with reporting guidelines, it is recognized that improved measures of judicial workload are needed. In its 1984 certification order, we encouraged judges, clerks and court support personnel to work with the Office of the State Courts Administrator to study and recommend improved means of assessing the need for additional judges. A broadly representative group called the Court Statistics and Workload Committee was subsequently charged with that task by then Chief Justice James E. Alderman. The Committee filed a report in November of 1984, recommending substantial changes in the Summary Reporting System. The report also recommended the collection of data on active pending case loads and the establishment of audit trails for data reported to the state level. Other suggestions of the committee included: application of the results of a delphi exercise, designed to measure variations in the complexity of different types of cases, to the certification process; development of time standards for case processing; and improvement of management information available to judges.' On February 7, 1985, we endorsed the recommendations of the Court Statistics and Workload Committee and directed the Office of the State Courts Administrator to work further with the Committee toward their implementation. Once in place, the proposed changes should yield improved data for use in determining the need for new judgeships.
A number of factors have generally influenced case loads in Florida’s trial courts over the past year. Two statutes passed by the 1984 Legislature have resulted in measurable increases in judicial workload. The domestic violence and child support enforcement statutes, while they reflect critically needed changes in Florida law, have significantly increased hearing time. Florida’s DUI law continues to have the effect of increasing trials. Also, judges report that trials are becoming longer, largely as a function of an increasing motions practice in most jurisdictions.
*290 The trial courts have responded to workload pressures in a number of ways. Dispute resolution alternatives are employed in most courts for selected types of cases. Citizen dispute settlement, juvenile arbitration, mediation and conciliation in family cases, and the use of general or special masters, are all relied upon more frequently. Procedural innovations such as the use of uniform motions calendars, improved judicial control of cases, strict continuance policies, and regular review of pending cases, have also been used extensively. In sum, Florida’s trial judiciary is identifying and effectively employing alternatives to establishment of new judgeships in many areas of the state.
Still there remains a need for new judge-ships at the trial level. The primary considerations prompting our certification of need for the respective judicial circuits are as follows:
Fourth Judicial Circuit (Clay, Duval and Nassau Counties). There are currently twenty-four circuit and fourteen county court judges in the Fourth Circuit. The need for one additional circuit judgeship was certified in each of the last two years. We recertify that need for FY 1985-86.
The Fourth Circuit has not received a new judgeship since 1980 and has received only three additional circuit judgeships since adoption of article V in 1972. Three county court judges are nonlawyers and, therefore, cannot assist in circuit jurisdiction. Further, the Fourth Circuit realized an 18 percent increase in filings in 1984.
Fifth Judicial Circuit (Citrus, Hernan-do, Lake, Marion and Sumter Counties). The Fifth Circuit currently has eleven circuit and seven county court judges. We certify the need for an additional circuit judge in the second year of the biennium.
In spite of having received a new circuit judge in 1984, the Fifth Circuit is ranked second in the ratio of filings and dispositions per judge and first in the ratio of population per judge. It is projected to experience a very large growth in population through 1985. It is also ranked third in combined factors, including attorneys and trials per judge. Three of its seven county court judges cannot assist on the circuit bench, as they are nonlawyer judges. No retired judges reside in the Fifth Circuit. Additionally, the circuit covers a geographic area of 4,160 square miles and has five state correctional institutions located within its boundaries. Cross assignment of one judge to help another, when his or her calendar clears, is difficult because of distance.
Sixth Judicial Circuit (Pasco and Pinel-las Counties). The Sixth Circuit currently has twenty-nine circuit and fourteen county court judges, three of whom are in Pasco County. The need for one additional county court judge for Pinellas County was certified in 1984, and we recertify that need for FY 1985-86. In addition, we certify the need for one circuit judge in FY 1985-86.
In 1984 Pinellas County ranked sixth in county court filings per judge and fifth in dispositions per judge. The county continues to realize tremendous growth and is ranked tenth in population per judge. The county court operates in four locations. Travel between these locations has become increasingly time consuming, making the sharing of judicial resources difficult. The last new county court judgeship was created in Pinellas County in 1979, and that was the only new county judgeship created in the circuit since 1976.
Our certification of an additional circuit judge is based on the high ratio of population per judge, projected population growth, the large number of attorneys in the circuit, and geographic considerations relating to travel time within the circuit, in view of the five primary and two satellite courthouses. Additionally, there has been a 20 percent increase in circuit court jury trials between 1982 and 1984. Finally, the mix of cases is generally more complex than in comparable circuits.
Pinellas County has a high ratio of jury trials per county court judge. Therefore, county court judges are not readily available to assist with circuit court cases. The circuit court was required to utilize one *291 hundred thirty-seven retired judge days in 1984. The Sixth Circuit has also made a strong effort to employ citizen dispute settlement, juvenile mediation-arbitration and family mediation, to supplement and reduce the case load burden on judges.
Seventh Judicial Circuit (Volusia, St. Johns, Flagler, and Putnam Counties). The Seventh Judicial Circuit currently has fourteen circuit and ten county judgeships. We certify the need for one additional judgeship in Volusia County in FY 1985-86.
Volusia ranks among the highest in county filings per judge and has realized a 167 percent increase in jury trials since 1982. This is, in part, due to a major law enforcement crackdown on drunk drivers. Volusia is ranked seventeenth in attorneys per judge. Geographical factors were deemed significant in this certification, in as much as the county court operates at three locations. Only one judge sits full time in Deland, where the jail is located, yet all must travel to that location for first appearances.
Eighth Judicial Circuit (Alachua, Baker, Bradford, Gilchrist, Levy, and Union Counties). The Eighth Circuit currently has nine circuit and nine county court judges. We certify the need for one additional county judge in the second year of the biennium.
The circuit has experienced a 16 percent increase in filings since 1982. Filings continue to significantly exceed dispositions in spite of Alachua County being ranked third in the state in dispositions/judge. Eight state correctional institutions are located in the circuit, and geographically the circuit is 100 miles long and 50 miles wide. County court judges who are eligible to assist with circuit case load are used regularly for that purpose, thereby reducing judicial resources in the county court.
Ninth Judicial Circuit (Orange and Osceola Counties). The Ninth Circuit currently has nineteen circuit and twelve county court judges. One additional circuit judgeship was certified and authorized last year. However, we certify the need for an additional circuit judgeship in FY 1985-86. In addition, we certify the need for a county court judge in Orange County in FY 1985-86.
There has been a significant growth in population in the Ninth Circuit since 1975, and that trend is expected to continue. The circuit also has a large transient and tourist population. The Ninth Circuit ranks third in ratio of attorneys per judge and is ranked sixth in trials per judge. A large number of cases are handled through juvenile mediation-arbitration and civil mediation programs. Still, two hundred and sixty-seven retired judge days were required in the circuit in 1984, and one hundred and eighty-six days of additional compensation were paid county judges for circuit work. The latter has placed a greater load on other Orange County judges.
Orange County ranks high in combined filings, dispositions, trials, attorneys, and population per judge and has not had a new county court judge since 1979, despite significant population and tourist increases. Orange County has the sixth highest ratio of trials per judge among urban counties. "An indepth study of judge assignments and workloads in the Orange County court, by the Office of the State Courts Administrator, indicated that assignment of an additional judge to the traffic division was necessary to handle an increasing traffic case load.
Eleventh Judicial Circuit (Dade County). The Eleventh Circuit currently has fifty-eight circuit and thirty-three county court judges. One circuit and one county judgeship were authorized last year. Two circuit judgeships and one county judgeship we certified last year were not funded. We revise that previous certification and certify the need for one circuit and two county court judgeships in FY 1985-86.
The Eleventh ranks second in the state in ratio of attorneys per judge. It continues to have a high tourist and transient population. In addition, as we noted last year, the circuit has experienced a significant resident population increase, as well as a major influx of immigrants. The latter, *292 coupled with an already large Spanish speaking population, has required the court to employ a large staff of interpreters. In excess of 64,000 translations were made in 1984. The use of interpreters has the effect of almost doubling hearing or trial time when they are necessary.
Continued increases in the number of sworn law enforcement personnel in the county have resulted in increases in criminal filings, both at the circuit and county court level. The Eleventh Circuit is ranked fifth in the state in jury trials per judge. County court judges have been assisting on the circuit bench, with two county court judges serving almost full-time in the circuit criminal division. A total of five hundred seventy-three days of additional compensation were paid county judges for circuit work in FY 1983-84 and four hundred sixty-three retired judge days were utilized in the same year.
With high county court case loads, county judges must now attend to their own dockets. Dade County is ranked fourth in county court filings per judge. Traffic and criminal cases have increased significantly. Notwithstanding the extensive use of citizen dispute settlement and other dispute resolution alternatives, there is a need for both of the new county judgeships certified. The authorization of one circuit judge should allow the equivalent of at least one county court judge to return to the county bench from his circuit court assignment.
Twelfth Judicial Circuit (DeSoto, Manatee, and Sarasota Counties). The Twelfth Circuit currently has eleven circuit and six county court judges, with three county court judges in Sarasota County. The need for an additional county court judgeship for Sarasota County has been certified previously. We recertify that need for FY 1985-86.
Although the Legislature approved additional circuit judgeships for the Twelfth Circuit in 1981 and 1982, no county court judgeship has been approved in Sarasota County since 1976. The county court case loads have continued to grow and presently rank near the top in ratio of filings and dispositions per judge. Circuit court judges cannot assist regularly in county court due to the ever-increasing circuit court case load. Sarasota County is ranked fourth in ratio of population per judge, and third in number of attorneys per judge.
We certify the need for one additional county judgeship in Manatee County in the second year of the biennium. At fourteenth in both filings and dispositions per judge, Manatee County ranks relatively high in the state. It also ranks fourth in the state in jury trials per judge. Like its sister counties, it has realized a significant increase in population and now ranks second in population per judge. It is ranked thirteenth in attorneys per judge.
Fourteenth Judicial Circuit (Bay, Calhoun, Gulf, Holmes, Jackson and Washington Counties). The Fourteenth Circuit currently has five circuit judgeships and eight county judgeships, three of which are in Bay County. The Court certifies the need for one additional circuit judgeship in FY 1985-86.
The Fourteenth Circuit ranks number one in the state in filings and jury trials per circuit judge. It ranks seventh in dispositions per judge and third in population per judge. The Court has been precluded from utilizing county judges to help with the increasing case load in circuit court because five of the eight county judges in the circuit are nonlawyers. Only thirty-five days of additional compensation were paid for county judges to sit in circuit jurisdiction in FY 1983-84. Fifty-five retired judge days were paid in FY 1983-84. However, the retired judge who served elected not to bill for in excess of one hundred additional days.
The sharing of judicial resources across counties is difficult because travel between the various court locations in the circuit requires a considerable amount of time. Geographical factors, the inability to use the nonlawyer county judges and increasing case loads justify at least one additional circuit judgeship.
*293 Fifteenth Judicial Circuit (Palm Beach County). The Fifteenth Circuit currently has twenty-two circuit and eleven county court judges. The need for two additional county court judgeships was certified last year, and the Legislature authorized one of those positions. We recertify the need for the second county judgeship and additionally certify the need for one circuit judge.
The circuit continues to realize significant increases in resident population and has a large tourist population. Projections for 1985 are for a 50 percent increase over the 1975 population. The circuit ranks fifth in combined factors of filings, dispositions, trials, attorneys, and population per circuit judge. The circuit court has been highly dependent on the use of retired judges (one hundred eighty-three days paid in FY 83-84) and on county judges to sit in circuit divisions (one hundred forty days of additional compensation paid in FY 83-84). The cases that the circuit court must hear are generally more complex than the mix of cases of other circuits. The need for the additional circuit judge exists in spite of a greater reliance on dispute resolution alternatives (masters and mediation for domestic relations cases) and procedural innovations such as a uniform motions calendar.
There remains a need for at least one additional county court judge. Palm Beach County ranks third in county court filings per judge, fourth in dispositions per judge and first in combined overall ratios. Palm Beach County also ranks first among the urban counties in ratio of trials per county judge.
Seventeenth Judicial Circuit (Broward County). The Seventeenth Circuit currently has forty-one circuit and nineteen county court judges. The need for two additional county court judges was certified last year and both were authorized. We certify the need for one additional county judgeship in FY 1985-86.
Broward County judges are not generally available to assist in circuit court work. Three hundred ninety-eight retired judge days were used in the circuit in FY 1983-84. Broward County ranks second in overall combined ratios of filings, dispositions, attorneys, trials and population per county judge. Broward County ranks number one in total filings per judge and supplemental filings per judge. The county court has used dispute resolution alternatives extensively, handling approximately 1,000 cases per year through its citizen dispute settlement program. The need for authorization of a new county judge remains in spite of reliance on this program and employment of other measures designed to improve utilization of the existing judges.
Eighteenth Judicial Circuit (Brevard and Seminole Counties). The Eighteenth Circuit currently has fourteen circuit and nine county court judges. We certify the need for one additional county judge in Brevard County in FY 1985-86 and one additional circuit judge in the second year of the biennium.
At sixteenth, Brevard County ranks relatively high in filings per judge. It ranks fifth in jury trials per judge. Geographical factors are significant in this certification in that the court operates out of three locations. It is difficult and time consuming for judges to travel between those locations. County judges have not been available to assist in circuit court. Two hundred seventy-five retired judge days were paid in FY 1983-84, yet no days of additional compensation for county judges were paid in that same year. A recent study of workload distribution for the county court, conducted by the Office of the State Courts Administrator, suggests the need for an additional judge to be assigned to the central portion of the county.
The Eighteenth Circuit, while realizing a decline in number of circuit jury trials over the past two years, is still ranked second in jury trials per judge. It ranks fifth in population per judge. The same geographical factors which inhibit the sharing of workload in the county court affect the circuit court as well. These factors coupled with the requirement for two hundred seventy-five retired judge days in FY 1983-84 support the request for the additional circuit judge in the second year.
*294 Nineteenth Judicial Circuit (Indian River, Martin, Okeechobee, and St. Lucie Counties). The Nineteenth Circuit currently has eight circuit and seven county court judgeships. The need for one additional circuit judgeship was certified in each of the past two years. We recertify that need for FY 1985-86.
The Nineteenth Circuit is ranked third in both filings and dispositions per judge. It has realized a significant population increase which is expected to continue. Due to the size of the circuit (2,423 square miles), travel time is considerable. One of the county court judges is a nonlawyer. Nonetheless, the circuit has been heavily reliant on county judges to assist in handling circuit cases. Two hundred forty-six days of additional compensation were paid to county judges in FY 1983-84. Also, one hundred thirteen retired judge days were required in the circuit during the last fiscal year. Part of the problem facing circuit judges in the Nineteenth Circuit is attributable to the increasing complexity of drug related cases and an increase in motions practice.
Twentieth Judicial Circuit (Charlotte, Collier, Glades, Henry, and Lee Counties). The Twentieth Circuit currently has twelve circuit and nine county court judges. The need for one additional circuit judgeship is certified in the second year of the biennium.
The Twentieth Circuit ranks second in population per judge, and fourth in the ratio of trials per judge. It ranks second in the combined factors of filings, dispositions, population and attorneys per judge. It ranks relatively high in filings and dispositions per judge, at sixth and eighth respectively. Three of the county court judges are nonlawyers and cannot assist on the circuit bench. The circuit covers a large geographic area. This has made it difficult for judges in one location to backup those in another. Further, the circuit court has been heavily reliant on county judges, paying one hundred eight days of additional compensation in FY 1983-84. One hundred twenty-six retired judge days were also used in the circuit in that fiscal year.
CERTIFICATION
Accordingly, pursuant to article V, section 9, Florida Constitution, we certify the need for four additional district court of appeal judgeships, seven additional circuit court judgeships, and nine additional county court judgeships for fiscal year 1985-86. These judicial officers are necessary for the proper administration of justice, and we recommend they be made permanent and funded by the state. These new judgeships should become effective August 1, 1985.
We certify the need for three circuit and two county judgeships in the second year of the biennium. However, the Court will reassess the needs of all circuits next year and may certify the need for additional judges, if warranted.
BOYD, C.J., and ADKINS, OVERTON, ALDERMAN, McDONALD, EHRLICH and SHAW, JJ., concur.